# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **TYWON POSEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 3574 |
| | ) | |
| v. | ) | |
| | ) | |
| **OFFICER ROCCO PRUGER and** | ) | Magistrate Judge Daniel G. Martin |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tywon Posey ("Posey" or "Plaintiff") brought this action against the City of
Chicago ("the City"), Chicago police officer Rocco Pruger ("Pruger"), and various other
Chicago police officers and Cook County defendants concerning his arrest on June 13,
2009. Claims against officers other than Pruger, as well as all allegations against the Cook
County defendants, were disposed of earlier in the litigation. Only claims against Officer
Pruger and the City remain. Plaintiff's Second Amended Complaint alleges in Count I that
Pruger violated Posey's Fourth Amendment rights by falsely arresting and detaining him
in June 2009. 42 U.S.C. § 1983. Counts III and IV of the Complaint also assert claims of
malicious prosecution and false arrest against Pruger under Illinois state law. Plaintiff
seeks indemnification in Count V against the City pursuant to 745 ILCS 10/9-102.

The parties originally consented to proceed before Magistrate Judge Morton Denlow
for all purposes pursuant to 28 U.S.C. § 636(e) and N.D. Ill. R. 73.1(c). The case was then
reassigned to this Court on October 1, 2012 upon Judge Denlow's retirement. Defendants
have filed a motion for summary judgment on Counts I, III, IV, and V. Plaintiff has filed a

motion for partial summary judgment on Count I.  Plaintiff's motion is denied.  Defendants' motion is granted in part and denied in part.

## I.  Background Facts

Plaintiff Posey and Laura Williams were driving east down Fulton Street in Chicago at 1:20 a.m. on June 13, 2009.  Ms. Williams, who owned the car that Posey was driving, was seated in the passenger's seat.  Posey was traveling towards the intersection of Fulton Street and Kilpatrick Street.  Fulton is a one-way street that runs west to east.  Kilpatrick is a one-way street that runs south to north.  Unfortunately, what happened as Posey arrived at the intersection of these streets is exceptionally unclear under the current record. It is undisputed that two Chicago police cars were traveling toward the intersection of Fulton and Kilpatrick by moving in the wrong direction along Kilpatrick.  Officer Posey was in one of the vehicles with his partner Anthony Keany.  Two other officers were in the second car.  Posey claims the police cars were traveling at a high speed.  Neither of them had their headlights or sirens on.[1]  Posey was only able to recognize that they were police squad cars because the street lights were sufficient to reveal the police insignia ordinarily placed on such vehicles.  Plaintiff alleges that he stopped at the stop sign before he first saw the police vehicles coming the wrong way down Kilpatrick.  He then began to move forward but stopped again as "soon as I come out the stop sign" and after he had "crossed . . . the second line" painted on the intersection's cross-walk.  (Defs. SOF, Ex. 2 at 25-26, 28, 29).  Posey testified that he then proceeded through the intersection once the police

---

[1]  The Court held oral argument on Defendants' motion on September 8, 2015. Defendants' counsel was unable to state what the two Chicago police cars were doing, where they were going, why they were moving in the wrong direction on a one-way street, or why they did not have their headlights on.

cars slowed down as they approached the intersection he was trying to cross.

Several competing versions of these events are also present in the record. Ms. Williams stated at a 2010 state court proceeding that Posey stopped only once at the stop sign and then proceeded through the intersection. (Pls. Resp. to Defs. SOF, Ex. C at 11). Officer Pruger told the same state court that Posey never stopped at the Fulton/Kilpatrick stop sign at all; instead, he allegedly went through it at a speed of 20 to 30 miles per hour. (*Id*. at 32-33). Pruger's arrest report makes the same claims. (Defs. SOF, Ex. 7). Officer Keany agreed in an affidavit given five years later that Posey never stopped at the intersection. (Dckt. 234, Ex. 1).

To complicate matters further, Pruger has now submitted a new account of what happened. Contrary to his earlier testimony and Keany's recent affidavit, Pruger states in his Local Rule 56.1 Statement of Facts that Posey did, in fact, stop at the sign "and then drove through the intersection on Fulton." (Defs. SOF No. 6). Defendants claim that Posey did not see the squad cars until after he proceeded "through the intersection." (*Id*. No. 7). That, of course, would mean that Posey saw the police only after he was already driving on Fulton on the other side of the intersection he allegedly had just passed through. As a final twist, Defendants also claim that Posey did not simply drive through the intersection after stopping at the sign. Instead, he stopped at the sign, halted in the middle of the intersection when he saw the police (presumably before he went "through" the intersection), and then proceeded east on Fulton when he noticed that the cars had slowed down. (*Id*. No. 8)

As he approached the middle of the next block on Fulton, Posey claims that he approached a speed bump. He looked in his rear-view mirror at that point and noticed the

two police cars "just sitting" behind him on the corner of Fulton and Kilpatrick.  (*Id.*, Ex.2 at 33-34).   When his car had gone over the speed bump, however, Posey stated that he saw the two cars coming towards him from the rear with their sirens on.  He then pulled over to the side along a ramp that abutted a warehouse.  (*Id*. at 34-35).  Officer Pruger and the  other Chicago police officers approached Posey's car.  Posey testified that an officer asked while Posey was still in the vehicle if he had a driver's license.  (*Id*. at 35).  He did not.  Pruger then removed him from the car and placed him in handcuffs.  (*Id*. at 37-38).  Officer Pruger stated the same. (Pls. Resp. to Defs. SOF, Ex. C at 34-35).  In contradiction Ms. Williams claimed that Pruger took Posey out of the car before questioning him about the license and insurance.  (*Id*. at 26-28).  After Posey had been arrested Pruger searched the car he had been driving.   Twelve zip-lock baggies containing crack cocaine were discovered on the driver's side of the car.  Pruger was transported to a police station.  A custodial search disclosed additional bags of cocaine.  Posey was subsequently charged with two felony counts of possession of narcotics with intent to deliver.  (Defs. SOF, Ex. 12).

Plaintiff later moved to quash the arrest and suppress the evidence.  Cook County Circuit Judge Rickey Jones held a hearing on the matter on February 10, 2010.  Pruger, who was represented by a law student, did not testify.  Officer Pruger and Ms. Williams did. Pruger stated that he removed Posey from the car after Plaintiff said that he did not have a driver's license or insurance.  Pruger testified that he returned from his squad car to Posey's vehicle, where he saw the bags of cocaine lying on the floorboard in plain view. Ms. Williams, who had been detained outside the car by another officer, testified that the

drugs were produced only after a 40 minute search.  (*Id*. at 15).  Pruger also wrote in his police report that he had carried out a thorough search of the vehicle.  (Defs. SOF, Ex. 4 at 39).  Notwithstanding his own prior statement, Pruger told Judge Jones that he had not carried out a comprehensive search before locating the drugs. He also told the state court that the search was done to ensure the officers' safety after Pruger saw Posey make furtive gestures with his hands.

The state court judge was unimpressed by Pruger's testimony.  Judge Jones found that Posey's alleged furtive gestures were insufficient to permit the officers to search his car.  He also noted that Pruger's written report concerning the vehicle's search contradicted his court testimony that he saw the bags of drugs in plain view.  Finding the State's evidence to be non-credible, Judge Jones concluded that no probable cause existed for stopping or arresting Posey.  The arrest was quashed; the evidence was suppressed.  (*Id*., Ex. 4 at 66-67).  The State later dismissed charges against Plaintiff *nolle prosequi* on February 24, 2010.  Plaintiff brought the instant civil rights suit against Pruger, the City, and various other defendants who are no longer part of the case.

## II.  <u>Legal Standard</u>

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Such a fact issue exists only where a rational trier of fact could find for the nonmoving party.  *Id*. at 324.  The evidence, together with all reasonable inferences that can be drawn from it, must be viewed in the light most favorable

5

to the nonmoving party.  *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The nonmoving party cannot overcome a summary judgment motion by relying on unsubstantiated facts or by resting on its pleadings.  *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Instead, the party that bears the burden of proof on an issue must demonstrate by means of admissible evidence that a genuine issue of material fact exists on a particular issue that requires a trial.  *Id*.  A court neither weighs conflicting evidence nor resolves factual disputes in deciding whether summary judgment is appropriate.  *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

### III.  Discussion

#### A.  Plaintiff's Motion

Posey argues that Defendants are collaterally estopped from disputing his Fourth Amendment claims in this case because the state court granted his motion to quash the arrest.  Findings in state criminal proceedings can have an estoppel effect in § 1983 civil rights cases because federal courts give full faith and credit to state judicial findings.  28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp.2d 814, 819 (N.D. Ill. 2002).  State law applies when federal courts consider whether a prior state court proceeding precludes a § 1983 claim.  *Haring v. Prosise*, 462 U.S. 306, 313-14 (1983); *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir. 1987).  Illinois requires a plaintiff to demonstrate three factors for collateral estoppel.  He must show that: (1) the previously-decided issue is identical to the one currently presented,

(2) a final judgment was issued on the merits in the prior adjudication, and (3) the party against whom collateral estoppel is argued was either a party in, or in privity with another party in, the earlier proceeding. *Gumma v. White*, 216 Ill.2d 23, 38, 833 N.E.2d 834 (2005). As an equitable doctrine, collateral estoppel does not automatically arise when a plaintiff satisfies these provisions. Courts have "broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the threshold requirements for collateral estoppel are otherwise satisfied." *In re Owens*, 125 Ill.2d 390, 399, 532 N.E.2d 248 (1988).

Defendants argue that the first of these elements has not been met in this case because the state court judge never considered whether Pruger might have had probable cause to arrest Posey at some point after the stop was initiated. (Dckt. 233 at 3, claiming that the state court judge "did not consider whether probable cause [to arrest] arose at any point in the encounter"). Defendants argue that this is critical because, unlike the criminal standard that Judge Jones considered when he quashed Posey's arrest, civil law does not apply the "fruit of the poisonous tree" doctrine. Thus, the fact that an arrest may be constitutionally invalid under criminal law when an officer lacks probable cause to initiate a stop does not apply to a civil claim for false arrest. An officer in a civil Fourth Amendment case can still demonstrate probable cause for an arrest if he can show that valid reasons for arresting a person arose after an invalid traffic stop. *See Dyson v. Village of Midlothian*, 2015 WL 778850, at *7 n.7 (N.D. Ill. Feb. 18, 2015) (noting that courts in this Circuit uniformly refuse to apply the "fruit of the poisonous tree" doctrine to civil cases); *Williams v. Carroll*, 2010 WL 5463362, at *4 (N.D. Ill. Dec. 29, 2010).

Defendants' claim on this matter is both skeletal and devoid of any reference to the

7

state court transcript. The logical premise of Defendants' argument is that Judge Jones quashed Posey's arrest because he determined that the stop was invalid. That is simply wrong. Judge Jones never said that Pruger lacked probable cause for arresting Posey *because* the stop was invalid. Indeed, the state court judge never discussed the stop at all, though both parties concede that he concluded it was improper. It is also not the case, as Defendants claim, that Judge Jones did not address the events that arose after the stop took place. Pruger arrested Posey for several reasons. The police arrest report identifies two broad categories – Posey was driving without a license, and 15 grams of cocaine were found in the car. (Defs. SOF, Ex. 7). Judge Jones addressed the search of Posey's car at length. He harshly criticized Pruger's testimony on Posey's alleged furtive hand gestures that was one of Pruger's several reasons for the search. Judge Jones also pointed out that Pruger had given contradictory accounts about when and how he found drugs in the vehicle. (Pls. Resp. to Defs. SOF, Ex. C at 66-67). Thus, Defendants' basic allegation that the judge never discussed the post-stop events in this case is incorrect.

The relevant question is whether the fact that a state court criminal proceeding and a federal § 1983 action both involve probable cause for an arrest means that the state and federal issues are identical to one another. That is not always the case. The state court matter involved potential criminal penalties for Posey; the one before this Court concerns civil liability for Pruger. Police officers commonly raise the affirmative defense of qualified immunity in Fourth Amendment cases. Qualified immunity asks if an officer had "arguable probable cause" to arrest an individual even if no probable cause existed. "Arguable probable cause exists when a reasonable officer could *mistakenly* have believed that he had probable cause to make an arrest." *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir.

2012).  The standards that apply to probable cause and arguable probable are not the same.  *See Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002) (stating that arguable probable cause involves "a more lenient standard than probable cause").  Many courts have concluded that a state criminal proceeding should not be used as a basis for offensive collateral estoppel when the state court had no reason to consider whether the officer would be entitled to qualified immunity from a civil suit.  *See*, *e.g.*, *Cannaday v. Sandoval*, 458 Fed.Appx. 563, 566-67 (7th Cir. 2012); *Johnson v. Beckman*, 2013 WL 1181584, at *3-4 (N.D. Ill. March 21, 2013).

Plaintiff argues that the issue of qualified immunity in this case does not prevent him from meeting the first of the collateral estoppel factors.  Oddly, Pruger does not raise the immunity issue.  More oddly, and certainly more troubling, both parties overlook that Defendants Pruger and the City never answered Posey's Second Amended Complaint. On March 19, 2013, the Court allowed Plaintiff to file the new complaint that was attached to his motion.  (Dckt. 156).  An amended complaint supersedes all earlier pleadings and renders them void.  *See Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008);  *Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 638, n.1 (7th Cir. 2004); *Cat Scale Co. v. Truck Stop Scale Co.*, 2005 WL 3311439, at *1 (N.D. Ind. Dec. 5, 2005) ("An amended complaint supercedes the previously filed complaint in its entirety.") (citing authorities).

Federal Rule of Civil Procedure 12(a)(1)(A) ordinarily requires a defendant to answer a complaint within 21 days, though the period is extended to 60 days when the defendant waives service under Rule 4(d).  Instead of answering, the County Defendants (who are no longer part of this case) filed a Rule 12(b)(6) motion on April 17 to dismiss new

9

claims against them that were asserted under *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). The City and Pruger did not join this motion. A Rule 12(b)(6) motion tolls the answer period until after a court has decided the motion. If the motion is denied, the defendant must then file its answer within 14 days of the court's order. Fed. R. Civ. P. 12(b)(a)(4)(A). In a multi-defendant case, the filing of a Rule 12(b) motion by one defendant does not necessarily toll the answer period for other defendants who have not joined the motion. *See Hanley v. Volpe*, 48 F.R.D. 387, 387-88 (E.D. Wis. 1970); *see also Buckles v. Focus on Innovation, Inc.*, 2013 WL 5305683, at *2 (M.D. Fla. Sept. 20, 2013). The Court denied the motion to dismiss on May 15, 2013. To date, Defendants have not responded to Plaintiff's Second Amended Complaint.

That means that Pruger has not asserted a defense of qualified immunity because the Second Amended Complaint nullifies all earlier pleadings. This required Defendants to file a new answer that included the affirmative defense of immunity. *See* Fed. R. Civ. P. 8(c); *Robinson v. Horizon Blue Cross Blue Shield of New Jersey*, 2015 WL 4394210, at *1 (D.N.J. July 15, 2015) ("[A] defendant has not only a right, but an obligation, to file a new answer after a plaintiff files an amended complaint."). In fact, the failure to do so can result in an entry of default. In the absence of a qualified immunity claim, Plaintiff has met the first factor for collateral estoppel by showing that the probable cause issue here is identical to the one presented to the state court.

Posey also meets the second requirement. For collateral estoppel to exist, a state court is required to enter final judgment on the issue that is at stake in federal court. Defendants claim that did not take place here because the State voluntarily dismissed

criminal proceedings against Posey *nolle prosequi*. An entry of *nolle prosequi* means that the State is unwilling to prosecute the case. Relying on *People v. Norris*, 214 Ill.2d 92, 824 N.E.2d 205 (2005), Defendants claim this means that Judge Jones never entered a final judgment on the merits of the prosecution against Plaintiff.

Defendants' reliance on *Norris* is misplaced. It is true that a *nolle prosequi* dismissal "is not a final disposition of the case, and will not bar another prosecution for the same offense." *Norris*, 214 Ill.2d at 104, 824 N.E.2d at 213 (internal quotes and citation omitted). That said, *Norris* does not apply to this case. *Norris* involved the issue of double jeopardy; the State refiled charges against a set of criminal defendants in a new case after filing a *nolle prosequi* against the same defendants in an earlier proceeding. *Norris* held that the *nolle prosequi* did not prevent the State from initiating a subsequent prosecution against the same defendants. By contrast this case involves a suppression order, not double jeopardy. The fact that the State could renew criminal charges against Posey does not mean that Judge Jones' suppression order is not final. A judgment is final for purposes of collateral estoppel when the potential for appeal is exhausted. *People v. Powell*, 329 Ill.App.3d 906, 909, 812 N.E.2d 636 (2004). Under Illinois law the State had 30 days to appeal the state court's grant of the motion to quash. *People v. Holmes*, 235 Ill.2d 59, 67, 919 N.E.2d 318 (2009). The State did not do so. "Failure to file a timely motion to reconsider or an appeal renders the suppression order final." *People v. Goodwin*, 2011 Ill.App.3d 100173-U, at *3 (Ill.App.Ct. Aug. 12, 2011).

Defendants may be arguing that Judge Jones had to enter a final judgment on the underlying criminal charges before his suppression order could be "final" for estoppel

purposes. Even some of Plaintiff's own case authorities suggest as much. *See Stevenson v. City of Chicago*, 638 F. Supp. 136, 142 (N.D. Ill. 1986) ("Under Illinois law, a pretrial order granting a motion to suppress is a final order after judgment is entered *in the case*.") (emphasis added). This Court disagrees. *Stevenson* supported its conclusion by citing *People v. Williams*, 59 Ill.2d 557, 562, 322 N.E.2d 461 (1975). *Williams* involved a defendant and a co-defendant who had both been charged with two indictments for burglary. In proceedings concerning the first indictment, the defendant moved to suppress an incriminating statement made by the co-defendant. The trial court agreed, and the State dismissed the first indictment with leave to reinstate. The defendant then argued in the second indictment that the judge's ruling barred the same incriminating statement under collateral estoppel. The trial and appellate courts disagreed with the defendant. The Illinois Supreme Court found differently, stating that the suppression order in the first case "was a final order" because the State did not appeal it. *Id*. This means that finality stems from the exhaustion of appellate remedies for the suppression order itself. A suppression order can have estoppel effect once the time for appealing it has expired, even if final judgment has not been entered in the underlying case. *See also Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996) (involving a dismissal based on *nolle prosequi*); *People v. Taylor*, 50 Ill.2d 136, 277 N.E.2d 878 (1971); *People v. One 1984 Pontiac Parisienne Sedan*, 323 Ill.App.3d 717, 754 N.E.2d 359 (Ill.App.Ct. 2001) ("[C]ourts will accord [a suppression order] collateral estoppel effect as a 'final judgment' *if* the State has forgone or exhausted appellate review of the order".) (emphasis in original).

The third estoppel factor involves the identity of parties. Defendants claim that

Plaintiff does not meet this requirement because Defendant Pruger was only a witness in the state court proceeding, not a party to the case before Judge Jones. This fails to account for the full scope of Illinois law. Pruger did not have to be a party in the criminal case; he only had to be in privity with someone else who was a party. Privity exists when a non-party (here, Pruger) has an interest in a proceeding, and that interest is sufficiently similar to the interest of a party in the case (here, the State) that a ruling concerning the party can be applied against the non-party. "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *People ex rel. Burris v. Progressive Land Developers, Inc*., 151 Ill.2d 285, 296, 602 N.E.2d 820 (Ill.App.Ct. 1992). Illinois courts stress that "privity" is not subject to a precise definition and must be construed under the facts of a case. *See Yorulmazoglu v. Lake Forest Hosp*., 359 Ill.App.3d 554, 559, 834 N.E.2d 468 (Ill.App.Ct. 2005).

Plaintiffs have not shown that Pruger meets this standard for privity. *Booker*, *supra*, illuminates the point under similar facts. In *Booker* an Illinois state court had earlier dismissed charges against a defendant because the police lacked probable cause to arrest him. The defendant then brought a federal civil rights action for false arrest against the police officers who arrested him, claiming that the state court's finding that no probable cause existed was conclusive on the issue. The Seventh Circuit rejected the plaintiff's argument on probable cause because the defendant police officers "were not parties to the state court proceedings and did not have a full and fair opportunity to litigate the issue of whether they had probable cause to arrest [the plaintiff.]" *Booker*, 94 F.3d at 1057. Other courts have also rejected the claim that police defendants in a federal civil rights case are

automatically in privity with the State in an earlier criminal proceeding. *See McCoy v. Hernandez*, 203 F.3d 371, 374-75 (5th Cir. 2000).

The Court is persuaded based on these cases that Posey does not satisfy the final prong of the collateral estoppel analysis. The State's sole interest in this case was to secure a conviction against Pruger. It is true that the State had to overcome the hurdle of probable cause to do so. But the State had no reason to pursue that issue by also exploring evidence concerning Pruger's potential civil liability, or by otherwise considering any interest he might have in the matter. Pruger was merely a witness in the suppression hearing. He did not have a right to control the line of questioning, or even to decide who would testify.

Even if that were not the case and all three estoppel factors were met, the Court exercises its equitable discretion to find that estoppel should not be applied under these facts. Judge Jones quashed Posey's arrest based on the judge's serious reservations about why and how the search took place. What he did not discuss was why Pruger improperly arrested Posey because he was driving without a license. An officer has probable cause to arrest a person in Illinois for driving without a valid license or without insurance. *Williams v. Vasquez*, 62 Fed.Appx. 686, 690 (7th Cir. 2003); *Century Nat. Ins. Co. v. Tracy*, 339 Ill.App.3d 173, 177, 789 N.E.2d 833 (Ill.App.Ct. 2003) ("The public policy of Illinois is well known and well understood: a driver must possess a valid driver's license to operate a motor vehicle in Illinois."). All parties agree that Judge Jones ruled on the issue. But his reasons for doing so remain unclear. He may have relied on the conflicting testimony that Pruger and Ms. Williams gave about whether Pruger made the arrest before or after asking if Posey had a license. The point is important in this case because Ms.

14

Williams later revised her statement to agree with Pruger's version of events. Posey, who did not testify at the suppression hearing, also gave his account of the license issue in a deposition. Those matters are discussed in detail below. Giving Judge Jones' ruling estoppel effect would essentially nullify these new sources of evidence on the arrest issue. The Court concludes that it would be inequitable to Pruger to apply the state court ruling without giving him an opportunity to explain the relevance of all the subsequent evidence. Plaintiff's motion is denied.

## B. Defendants' Motion

Defendants argue that they are entitled to summary judgment because: (1) Pruger had reasonable suspicion to initiate the traffic stop; (2) probable cause existed for Posey's arrest; (3) Posey's federal and state law false arrest claims are duplicative; (4) Pruger's search of Posey was lawful; (5) his search of Posey's vehicle was also lawful; and (6) Pruger is entitled to qualified immunity. The Court addresses each of these claims in turn.

## 1. The Traffic Stop

Defendants argue that Officer Pruger had reasonable suspicion to stop Posey because Plaintiff committed a traffic violation in plain view of the police. "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person . . . and thus must be reasonable under the circumstances." *Huff v. Reichert*, 744 F.3d 999, 1004 (7th Cir. 2014). For a traffic stop to be reasonable, an officer must have a "reasonable articulable suspicion that criminal activity is afoot." *United States v. Riley*, 493 F.3d 803, 808 (7th Cir. 2007). This "requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Gentry v. Sevier*, 597 F.3d 838,

845 (7th Cir. 2010). An observed traffic violation satisfies this requirement. *Riley*, 493 F.3d

at 808. The standard is objective: "would the facts available to the officer at the moment

of the seizure or the search warrant a man of reasonable caution in the belief that the action

taken was appropriate?" *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994).

Pruger stated in his arrest report that Posey's traffic error involved running the stop

sign at the intersection of Fulton and Kilpatrick. He told the state court the same thing.

Inexplicably, Defendants now argue for the first time that the real reason for the stop was

that Plaintiff allegedly brought his car to a halt in the middle of the street without pulling over

to the curb. They cite 625 ILCS 5/11-1301(a) of the Illinois Vehicle Code for support. That

statue states:

> Outside a business or residence district, no person shall stop, park or leave
> standing any vehicle, whether attended or unattended, upon the roadway
> when it is practicable to stop, park or so leave such vehicle off the roadway,
> but in every event an unobstructed width of the highway opposite a standing
> vehicle shall be left for the free passage of other vehicles and a clear view of
> such stopped vehicle shall be available from a distance of 200 feet in each
> direction upon such highway.

An officer is entitled to stop and even arrest a driver who fails to comply with this statute.

*See Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007).

Defendants' reliance on the Illinois Vehicle Code is seriously misplaced. Posey was

driving in what he described as a residential district that then became more commercial on

the other side of the Fulton/Kilpatrick intersection. Defendants appear to believe that the

statutory provisions apply because Posey stopped his car in front of a residence or

business. *See* 625 ILCS 5/11-1301(a) ("Outside a business or residence district, no person

shall stop . . . ."). This gets things upside down. "Outside" in this statutory context does not

mean a street located in front of a residence or commercial building. It refers to locations

16

other than residential and business areas.  The statute does not apply to residential or business districts.  *Williams*, 509 F.3d at 399; *People v. Glisson*, 359 Ill.App.3d 962, 973, 835 N.E.2d 162 (Ill.App.Ct. 2005) ("[T]he statute is applicable to areas other than business or residential districts, rather than areas inside business districts[.]").  Defendants have not presented any evidence that the Fulton/Kilpatrick intersection is located anywhere other than what Posey described.  Even if it is, a driver only violates the statute "when it is practicable to stop" off the prohibited roadway.  Defendants have made no showing that Posey could have stopped his vehicle in some way that would have complied with the statutory provisions.  They have not described the street where Posey stopped, or given any explanation of why he could have acted differently.

Assuming for the sake of argument that the Vehicle Code does apply, the Court is at a loss to understand the basis of Defendants' reasoning.  Pruger told the state court that he stopped Posey because Plaintiff ran the stop sign at a speed of 20 to 30 miles per hour.  The Vice Case Report that Pruger filled out after the arrest stated that Posey ran the stop sign.  (Pls. Resp. to Defs. SOF, Ex. F).  So does the arrest report.  (Defs. SOF, Ex. 7 at 2).  Defendants have submitted a new affidavit from Officer Keany as part of these motions that also says Posey was stopped only after he ran through the Fulton/Kilpatrick intersection.  Neither officer ever suggested that Posey's real violation lay in where he stopped on the street.  To make matters even less clear, Defendants state in their Rule 56.1 Statement of Facts that – contrary to Pruger and Keany – Plaintiff *did* stop at the Fulton/Kilpatrick stop sign.[2]  (Defs. SOF No. 6).

---

[2]  Defendants suggested at oral argument that they were not abandoning all of their earlier contentions about what took place on June 13, 2009.  It is not clear what this meant,

Defendants' only support for their claim involves Posey's deposition testimony.  The problem is that Posey never said what Defendants ascribe to him.  He stated that after he went through the intersection he came to a halt after he reached "the middle of the block," which would have placed him halfway down the next block of Fulton east of the intersection. (Defs. SOF, Ex. 2 at 30).  He explicitly testified that he "pulled over."  (*Id*. at 34).  When asked if he stopped at a curb, Posey explained that no curb existed at that point on Fulton. (*Id*. at 35, "It's really no curb.  It's just, like, the warehouse, but probably a ride out.  You know what I'm saying?  A ramp or something like that.").  Ms. Williams agreed that Posey pulled over to what she described as a curb.  (Pls. Resp. to Defs. SOF, Ex. D at 52).  These accounts of how and where Posey stopped his vehicle conflict with Defendants' conclusory allegation that he stopped in the middle of the street instead of pulling over to a curb.

Defendants' new theory also fails to account for Posey's testimony on the sequence of events.  A person can only violate the Illinois statue once he has stopped his car in a forbidden location.  *See* 625 ILCS 5/11-1301(a) ("[N]o person shall stop, park, or leave standing any vehicle . . . .").  But Posey testified that he pulled his car over and stopped only *after* he saw the two police cars coming towards him from behind with their sirens on.  That means that the traffic stop was already underway before Plaintiff allegedly stopped his car

---

though Defendants are reminded that "[s]ummary judgment is not a dress rehearsal or a practice run."  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotes and citation omitted).  The Local Rule states that the moving party is required to submit "a statement of material facts as to which the moving party contends *there is no genuine issue*[.]" L.R. 56.1(a)(3) (emphasis added).  Plaintiff agrees with Defendants that he stopped at the sign, thereby creating "a binding judicial admission of fact" on the issue.  *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp.2d 989, 995 (N.D. Ill. 2007).  How this squares with Pruger's prior sworn testimony is, of course, not at issue here.

in violation of the statute. Police officers cannot reasonably believe that a vehicle should be stopped for violating 625 ILCS 5/11-1301(a) before the car has even come to rest in a location prohibited by the statute's terms. If that were the case, the statute's language of "stop, park, or leave standing" would be meaningless. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotes and citation omitted). Defendants' motion is denied on this issue.

### 2. The Section 1983 False Arrest

Defendants next claim that Pruger had probable cause to arrest Posey. Officers have "probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (internal quotation omitted). This does not require evidence that would support a conviction. *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). An officer is entitled to draw reasonable inferences based on his training and experience. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). "[C]ourts must focus on the real world situation as known to the officer at that time." *Id*. The existence of probable cause precludes a § 1983 claim for false arrest. *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003) (internal quote and citation omitted).

Defendants no longer claim as they did in state court that Pruger had cause to arrest Posey because of the drugs he discovered in the car. They allege instead that Posey

illegally stopped his car in the "middle of the road."  (Defs. Mot. at 5).  This claim has given

the Court serious pause.  Probable cause only arises if there are "facts and circumstances

within [an officer's] knowledge" that are sufficient to make a reasonable person think that

a suspect is committing an offense.  *Booker*, 94 F.3d at 1057 (internal quote and citation

omitted).   A  probable  cause  analysis  always  involves  the  critical  question  of  how

circumstances "would have appeared to a reasonable person in the position of the arresting

officer – seeing what he saw, hearing what he heard."  *Kelley v. Myler*, 149 F.3d 641, 646

(7th Cir. 1998).  Yet Pruger told the state court that Defendants' new version of events was

not within his knowledge at the time of the arrest; he said that Posey went through the

intersection at 20 to 30 miles an hour.[3]  Pruger could not have reasonably believed that

Posey violated Illinois' traffic laws by stopping in the street when his prior sworn testimony

stated that Plaintiff never stopped at all.  Defendants' argument results in the troubling

proposition that an officer has probable cause to arrest a person for actions that he does

not see, that he denied under oath took place, and that he does not seem to have thought

of until five years after the arrest.  The merits of such a claim require no comment.

Defendants  also  argue  that  probable  cause  existed  because  Posey  was  driving

without a valid driver's license.   It is undisputed that Posey did not present a license to

Pruger when he was stopped.  An officer is entitled to make a full custodial arrest even for

minor traffic violations.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  This

---

[3]  Defendants' claim at oral argument that Posey stopped in the middle of the
intersection does not rescue this issue.  Setting aside the fact that this directly contradicts
Pruger's prior testimony, no reasonable person could conclude that a driver who goes
through an intersection at 20 to 30 miles an hour could also have come to a halt in the
middle of it.

includes driving without a license. *See* 625 ILCS 5/6-101; *United States v. Jackson*, 377 F.3d 715, 715-16 (7th Cir. 2004); *People v. Moorman*, 369 Ill.App.3d 187, 196, 859 N.E.2d 1105 (Ill.App.Ct. 2006) (involving a revoked license).

Defendants are entitled to summary judgment on this issue. Pruger testified before the state court that he asked Pruger to produce a license before he removed Plaintiff from the car and arrested him for driving without a license or insurance. (Pls. Resp. to Defs. SOF, Ex. C at 34, 43). Ms. Williams contradicted this testimony by telling Judge Jones that Pruger forced Plaintiff to leave the car and took him into custody before asking him about the license. (*Id*. at 25-28). That would mean that Pruger initiated the arrest before he had reason to suspect that Plaintiff was committing a traffic violation. *See Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004). Plaintiff argues that a genuine issue of material fact on the timing issue exists based on Ms. Williams' testimony at the state court hearing.

The Court disagrees. Plaintiff fails to account for the complete record on this issue. Ms. Williams contradicted her state court testimony by claiming in a subsequent deposition that Pruger asked Posey about his driver's license before Plaintiff got out of the car and was placed under arrest. (Pls. Resp. to Defs. SOF, Ex. D at 58). Standing alone such a contradiction would preclude summary judgment because the Court would be required to choose which version of Williams' statements to credit. However, Plaintiff himself unambiguously testified during his deposition that he told Pruger about the driver's license before he got out of the car. His testimony was particularly clear on the issue because it involved difficulties in getting out of the car due to a colostomy bag that Pruger was wearing at the time of the traffic stop:

A:  I pulled over, [ and Pruger] come up to the car.  I still got my seat belt on.

21

They see – They see Laura [Williams].   He asked me do I have some insurance – I mean a license.  I said, "No, sir, I don't have no license."
. . . .
I told him I didn't have a license.

Q:   Did he say anything to you after that?

A:   Oh, well, what he said – what did he said after that?  It was so fast because when he asked me for the license when I was at the car, but I – When he tried to pull me out, but I couldn't get out because I got the seat belt wrapped up on me, and then plus I got my colon hanging on my side and everything irritating all of my stomach.  I tell him, like, "Joe" – I said, "Listen." I said, "Man, I'm trying to get the seat belt off."

(*Id*., Ex. B at 35, 37).

Even when all inferences are drawn in Posey's favor, as they must be under Rule 56, no reasonable fact finder could construe this testimony to mean that Pruger only asked Plaintiff about his driver's license after taking him out of the car and putting him into custody.  At a minimum, this testimony shifts the burden under Rule 56 to Plaintiff to set out specific evidence showing that a genuine issue of fact exists for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Becker v. Tenenbaum-Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).  A non-moving party cannot survive summary judgment if it does not present evidence sufficient to support each element on which it will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.   Plaintiff only cites Ms. Williams' state court testimony.  It is difficult to see how Posey could rely on such statements to avoid summary judgment when his own testimony concedes that Williams' prior statements were not accurate.  Defendants' motion is granted on the arrest issue.

### 3.    The State False Arrest

Posey has also asserted a claim of false arrest under Illinois law.  Defendants ask

the Court to dismiss either the federal or the state claims because they rely on the same facts, involve the same standard, and are duplicative of one another. Strictly speaking this Rule 12 request is now moot in light of the Court's ruling on Posey's federal claim. That said, finding that Pruger lacked probable cause to arrest Posey substantially addresses the merits of the state false arrest allegation. "As with federal law, in Illinois the existence of probable cause to arrest defeats any claim for false arrest or false imprisonment." *Patterson v. Burge*, 328 F. Supp.2d 878, 899 (N.D. Ill. 2004). The question then becomes whether the Court should enter summary judgment *sua sponte* on the state claim. Courts have the authority to do so, though the practice is properly restricted to limited circumstances. *See Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999) (citing cases). The party against whom judgment is entered should have notice of a court's intention and be given an opportunity to respond. *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 461-62 (7th Cir. 2009); *Goldstein v. Fid. and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) ("The party against whom summary judgment is entered must have notice that the court is considering dropping the ax on him before it actually falls.").

Defendants' have brought their request within the context of a motion for summary judgment on all of Posey's allegations other than the state false arrest issue. Plaintiff is well aware that all of his claims are subject to dismissal in one form or another. Posey has responded at length to Defendants' arguments that Pruger had probable cause to arrest him. The same facts are relevant to Plaintiff's federal and state claims. This has given Posey a full opportunity to present all his arguments on the topic. Since the absence of

probable cause automatically defeats a state claim of false arrest, *Patterson*, 328 F. Supp.2d at 899, there is no need to give Posey an opportunity to present additional arguments.  The probable cause issue has been thoroughly litigated.  Under these facts, the Court *sua sponte* grants summary judgment for Defendants on the state false arrest claim.

### 4.    The Search

Defendants contend that the search that Officer Pruger carried out on Plaintiff after the arrest was lawful even though he lacked a warrant.  The Court agrees.  "Where there is a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment.  *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008).  Defendants' motion is granted on the search of Posey

Defendants also claim that the officer's search of Plaintiff's vehicle was lawful. Defendants notably abandon all of the reasons that Pruger told Judge Jones he relied on to search the vehicle.  They claim instead that what took place was actually an inventory search pursuant to an impoundment.  Impoundments under Illinois law include those carried out for public safety.  A vehicle that is driven without proof of insurance is subject to impoundment because it is "tantamount to a disabled vehicle".  *People v. Nash*, 409 Ill.App.3d 342, 358-59, 947 N.E.2d 350 (Ill.App.Ct. 2011).  Moreover, the Illinois Vehicle Code provides that a driver like Posey who violates the mandatory insurance requirements "shall have his or her motor vehicle immediately impounded by the arresting law enforcement officer."  625 ILCS 5/6-303(3); *see also* 625 ILCS 5/7-601.  For these reasons,

Defendants had the right to impound Posey's car when he could not provide proof of insurance.

That does not automatically make the inventory search of the car lawful. Inventory searches are well recognized as exceptions to the warrant and probable cause requirements of the Fourth Amendment. *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991). Inventory searches prior to towing a vehicle are "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property – and protecting the police from the owner's charging them with having stolen, lost, or damaged the property." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (quoting *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). Compliance with a municipality's procedural requirements is necessary to prevent an inventory search from being used as a "ruse for general rummaging in order to discovery incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). *See also Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987) ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.").

Defendants rely on the fact that the Chicago Police Department has issued General Order 81-1, which states that "all property which is seized, recovered, found or otherwise taken into custody by Department members will be inventoried immediately." Defendants claim in a conclusory manner, and without citing anything in the record, that Pruger followed General Order 81-1 by searching the interior and exterior of Posey's car. This claim immediately runs into strong headwinds. The section of the General Order that Defendants cite only concerns the right to conduct an inventory. Order 81-1 also contains detailed requirements about how that search must be carried out. It states, for example, that an

25

officer is required to use Property Inventory [Form] CPD-34.523 to record the receipt of the inventoried property. The arresting officer is directed to remove all personal property from the vehicle and inventory it. The Personal Property Receipt CPD-11.502 is used to record valuable personal property that must be returned to the arrestee upon his potential release.

The recovering officer is further required to take custody of the retrieved property and transport it to the district station or some other appropriate facility. The officer who transports the property must "sign and provide the removal information requested on the back of the Property Inventory copy No. 5." (Defs. SOF, Ex. 6).

The failure to follow each of these written procedural guidelines does not automatically render a search unreasonable. *See United States v. Mundy*, 621 F.3d 283, 293 (3d Cir. 2010). Nevertheless, an officer must show that an inventory "was conducted in good faith according to established department procedures." *Manning v. Sweitzer*, 891 F. Supp.2d 961, 967 (N.D. Ill. 2012). There is insufficient evidence for the Court to conclude that Pruger made an inventory search at all, much less that he complied with the procedural requirements. As so often in this case, it does not appear to have occurred to Pruger before now that what he was really doing was taking an inventory pursuant to an impoundment. He certainly never told the state court that was what the search was based on. Defendants do not cite any evidence supporting their conclusory claim; do not note any of the General Order's procedural requirements; do not allege that Pruger complied with them; and do not state that the search was done, at least in part, to protect the police form charges of having "stolen, lost, or damaged the property." *Cherry*, 436 F.3d at 772.

The record contains none of the forms a recovering officer is required to use. Nor do Defendants claim that Pruger made an inventory of retrieved items; they merely state

that he retrieved bags of cocaine when he saw them in plain view. (Defs. SOF at ¶ 24). Pruger may not have found anything in the car that he needed to record for the inventory. Or he may not have actually searched the car for inventory purposes at all (which, of course, he never claimed at the suppression hearing). Pruger cannot show that he complied with standard police procedures when the record is unclear on what he did as part of the search in question. Defendants' silence on the facts involved with the alleged inventory search does not meet this standard and creates an issue of fact that only a jury can resolve.

### 4. Malicious Prosecution

Illinois recognizes the common law tort of malicious prosecution. *Miller v. Rosenberg*, 196 Ill.2d 50, 749 N.W.2d 946 (2001). A plaintiff asserting such a claim must show that (1) he was subject to a criminal or civil judicial proceeding, (2) no probable cause existed for it, (3) the defendant instituted or otherwise continued the proceeding maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff experienced an injury. *Cervantes v. Jones*, 188 F.3d 805, 809 (7th Cir. 1999); *McCally-Bey v. Kirner*, 233 F. Supp.2d 1009, 1017 (N.D. Ill. 2002). A finding of probable cause acts as a complete defense to a claim of malicious prosecution under Illinois law. *Penn v. Chicago State Univ*., 162 F. Supp.2d 968, 975 (N.D. Ill. 2001); *Howard v. Firmand*, 378 Ill.App.3d 147, 149, 880 N.E.2d 1139 (Ill.App.Ct. 2007). Police officers like Pruger are only liable for the tort of malicious prosecution if their "participation in it [was] so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co*., 152 Ill.App.3d 578, 583, 504 N.E.2d 756 (Ill.App.Ct. 1986).

Posey obviously satisfies the first of these factors. The Court does not discuss the final issue of injury because Defendants fail to address it in their motion. That may be because no showing of a special injury is required when malicious prosecution is based on the institution of a criminal proceeding. *Voga v. Nelson*, 115 Ill.App.3d 679, 682, 450 N.E.2d 1364 (Ill.App.Ct. 1983).

Whether probable cause exists poses a more difficult question. Pruger had probable cause to arrest Posey for driving without a license. That would decide the issue had Posey been charged with driving without a license. But he faced the far more serious charges of two felony counts of possessing narcotics with the intent to deliver. The drugs were retrieved following a search that the state court clearly thought lacked all merit. Pruger argues that he had probable cause because the bags of drugs were lying in plain view on the driver's side of the car. That falls far short of determining the issue in this case. The state court rejected out of hand the very claim that Pruger relies on here. Even though Judge Jones' ruling is not entitled to collateral estoppel effect, it is not irrelevant. The state court noted with clear disfavor that Pruger had given varying accounts of how he went about retrieving the drugs that formed the basis of Posey's criminal prosecution. This Court shares those concerns. Whether probable cause exists under these facts requires a credibility decision about which of Pruger's shifting accounts should be credited. Only a fact finder can resolve what really took place.

It would also be erroneous to find as a matter of law that Pruger acted without malice. Malice can be inferred under some circumstances when probable cause is lacking. *See Denton v. Allstate Ins. Co.*, 152 Ill.App.3d 578, 587, 504 N.E.2d 756 (Ill.App.Ct. 1986) ("Malice can be inferred where there is want of probable cause when circumstances which

28

exist are inconsistent with good faith by the prosecutor and where such want of probable cause has been clearly established."); *Turner v. City of Chicago*, 91 Ill.App.3d 931, 937, 415 N.E.2d 481 (Ill.App.Ct. 1980). Once again, though, that inference cannot be made as a matter of law when the underlying facts are as unclear as they are here. If a reasonable fact finder determines that Pruger really located the drugs only after a comprehensive search (as he said), he might infer that the conflicting allegation that they were in plain view (which he also said) is indicative of some level of malice that is sufficient for the tort of malicious prosecution. Another fact finder might reach the opposite conclusion. The issue can only be resolved by determining what took place, and then inferring Pruger's intent.

This contested background is made even more problematic by Pruger's puzzling silence in this case. Defendants have not submitted any deposition or affidavit testimony from him. All that the Court knows about Pruger's actions and state of mind must be inferred from the state court suppression hearing. That is insufficient, among other reasons, because Pruger's intent had no relevance to the state court's consideration of whether he had probable cause to make the arrest. Pruger's subjective intent was not at issue at that point, and the State had no reason to develop the evidence on the issue. The Court cannot find under these facts that Pruger lacked malice as a matter of law.

Finally, Defendants argue that the state proceeding did not terminate in a finding of innocence because Judge Jones did not enter final judgment in the case. A plaintiff cannot assert a malicious prosecution claim for a criminal action unless the proceedings were terminated in a manner that is "indicative of the innocence of the accused." *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238 (1996). Defendants overlook that a *nolle prosequi* termination of a case is not necessarily inconsistent with a finding of innocence.

29

Illinois courts require the dismissal to be viewed in light of the circumstances surrounding it. "The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purposes of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* Defendants have not made any showing of how these guidelines apply to Posey's state prosecution. They do not even cite the Illinois standard. The burden for making a proper analysis of the matter rests with Defendants, not the Court. The criminal case was presumably dismissed because Judge Jones found that no probable cause existed for Posey's arrest. Whether that is sufficient to demonstrate that the *nolle prosequi* is "indicative of innocence" is a fact issue for a jury. Defendants' motion is denied on the malicious prosecution issue.

### 5. Immunity

Defendant Pruger claims in his motion that he is entitled to qualified immunity. As explained earlier, however, no qualified immunity defense has been presented at this stage because Defendants never answered the Second Amended Complaint. They can now only do so with the leave of Court, though a liberal standard applies. Fed. R. Civ. P. 15(a). Defendant Pruger's motion on qualified immunity is denied without prejudice.

Pruger also claims that he is immune from the state law malicious prosecution and false arrest claims under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-101 *et seq*. This claim fails for the same reason as Pruger's qualified immunity defense. "State law immunity, like federal immunity, is an affirmative

defense." *Weiler v. Village of Oak Lawn*, — F. Supp.3d —, 2015 WL 1538498, at *6 (N.D. Ill. March 31, 2015).  Since Pruger did not answer the Second Amended Complaint, he never asserted an affirmative defense under the Illinois statute.

Even if Pruger had done so, he is not entitled to immunity under the statutory provisions he cites.  Pruger relies on two sections of the Act.  The first is Subsection 2-201, which states that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201.  The plain language of the statute shows that it only applies to employees who are alleged to have caused an injury by means of a policy decision, and who also have the authority to exercise discretion.  *See Doe ex rel. Doe v. White*, 627 F. Supp.2d 905, 922 (C.D. Ill. 2009); *Torres v. City of Chicago*, 123 F. Supp.2d 1130, 1133 (N.D. Ill. 2000).  A policy decision under Illinois law requires an employee "to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests."  *Harrison v. Hardin Cty. Comm. Unit School Dist. No. 1*, 197 Ill.2d 466, 472, 758 N.E.2d 848 (2001).  Pruger obviously did not balance different interests or make a policy decision when he arrested Posey.

Pruger also cites Subsection 2-202, which states that "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."  745 ILCS 10/2-202.  Willful and wanton behavior is defined as action that "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety

of others or their property." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). In the absence of anything from Pruger other than his testimony before the state court, the determination of his intention in Posey's arrest involves a fact issue that cannot be decided on summary judgment. The motion is denied without prejudice on the state immunity claim.

## IV.    Conclusion

For all the reasons stated above, Plaintiff's motion for summary judgment [226] is denied. Defendants' motion [225] is granted in part and denied in part. The motion is granted concerning false arrest and the search of Posey's person under Count I of the Second Amended. It is denied as to all other aspects of the Fourth Amendment claim. The motion is denied on Count III (malicious prosecution). The motion is granted on Count IV (false arrest under Illinois law). It is denied without prejudice on Pruger's claims of qualified immunity and state law immunity. The motion is also denied without prejudice on Count V (indemnification).

ENTER:

_____
DANIEL G. MARTIN
United States Magistrate Judge

Dated: September 22, 2015.